## IN THE OREGON TAX COURT
## REGULAR DIVISION
### Local Business Tax
### (Clean Energy Surcharge; Portland City Code 7.02)

| | | |
|---|---|---|
| CITY OF PORTLAND by and through REVENUE DIVISION, | ) ) ) | |
| Plaintiff, | ) | **TC 5500** |
| v. | ) ) | |
| LSG SKY CHEFS USA, INC. & SUBSIDIARIES, | ) ) ) | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'** |
| Defendants. | ) ) | **MOTION TO DISMISS COMPLAINT** |

This matter is before the court on Defendants' Motion to Dismiss Complaint, filed in this division on April 8, 2026. Defendants argue that the complaint was required to be filed in the Magistrate Division rather than in this division of the court. Plaintiff presents counterarguments but asks that, if the court were to agree with Defendants, the court either transfer the case to the Magistrate Division or dismiss the complaint without prejudice to Plaintiff's right to replead in the Magistrate Division under ORS 12.220.[1] Defendants contend that the court lacks authority to transfer the case, and that repleading would be futile because ORS 12.220 does not apply to this court. The court agrees with Defendants that the complaint was filed in the incorrect division, may not be transferred, and must be dismissed. However, the court agrees with Plaintiff that dismissal should be without prejudice because this court has not adjudicated the merits of the case, and ORS 12.220 applies to the deadlines for appeal to the divisions of this court.

---

[1] Unless otherwise stated, references to the Oregon Revised Statutes (ORS) are to the 2025 edition.

# I.  BACKGROUND

The limited facts relevant to Defendants' motion are taken from Plaintiff's complaint and attachments, or from the court's records.[2]  On February 13, 2024, Plaintiff issued a "Final Determination" assessing Defendants an amount of "Clean Energy Surcharge" (CES), a tax imposed by Plaintiff, for tax year 2019.  (Ptf's Compl at 1-2, ¶¶ 1, 3, 4.)  Defendants disagree with the assessment and appealed to the City of Portland's Revenue Division Appeals Board (RDAB).  On December 10, 2025, the RDAB issued its decision, which vacates the assessment.  (*See id.* at 2, ¶ 5.)  The basis of the RDAB decision is its conclusion that Defendants' gross revenue from "retail sales" to airlines does not include catering revenue attributable to airplane meals and other items consumed by the airlines' customers.  (*See id.* at 6.)  Plaintiff disagrees with the RDAB decision and filed a complaint--solely in this division--on March 10, 2026, asking the court to overturn the RDAB decision and to reinstate Plaintiff's Final Determination.  (*See* Ptf's Compl at 4.)

The court addresses the three issues below in sequence.

## I.  ISSUES

A.  *Whether the Regular Division Has Jurisdiction To Hear the Complaint*

B.  *Whether the Regular Division May Transfer the Case to the Magistrate Division in Lieu of Dismissal*

C.  *Whether the Regular Division Should Dismiss Without or With Prejudice*

---

[2] On review of a motion to dismiss, the court "assume[s] that the facts alleged in the complaint are true and draw[s] all reasonable inferences in plaintiff's favor."  *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 278, 171 P3d 336 (2007).

## II.  ANALYSIS

A.      *Whether the Regular Division Has Jurisdiction To Hear the Complaint*

Defendants argue that only the Magistrate Division has jurisdiction to hear the complaint in the first instance because this appeal is subject to the general requirement in ORS 305.501(1) that "an appeal to the tax court shall be heard by a tax court magistrate unless specially designated by the tax court judge for hearing in the regular division."[3]  (Def's Mot Dismiss at 5.) According to Defendants, this appeal is governed by ORS 305.410(3), which contains no exception to the general rule of ORS 305.501(1).  Specifically, Defendants argue that this appeal fits within a 2024 amendment, effective nearly two years before Plaintiff's complaint, that expanded the scope of ORS 305.410(3) to include issues involving local "taxes or fees reported on the same return as a tax imposed on or measured by net income."[4]  As thus amended, the 2025 edition of ORS 305.410(3) (emphases added) provides:

> "(3) Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court, *the tax court* shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under any tax law of a local government that is imposed upon or measured by net income or *taxes or fees that are reported on the same return as a tax imposed on or measured by net income*. The tax court does not have jurisdiction to review determinations of a local government relating to the collection, enforcement, administration or distribution of a tax described in this subsection."

---

[3] There is no dispute that the Tax Court judge has not specially designated this appeal for hearing in the Regular Division.

[4] The legislature added what is now subsection (3) of ORS 305.410 in 2023, effective September 24, 2023, and applicable to petitions filed on or after that date. *See* Or Laws 2023, ch 313, §§ 2, 8, 9 (HB 2576).  The 2023 act did not, however, contain the phrase referring to "taxes or fees that are reported on the same return as a tax imposed on or measured by net income."  That phrase was added by a 2024 act, effective June 6, 2024, as discussed in more detail below.  *See* Or Laws 2024, ch 52, §§ 36, 42 (SB 1526).  Before the 2023 and 2024 acts became effective, the court's jurisdiction was limited to cases arising under the "tax laws *of this state*," with few exceptions.  *See* ORS 305.410(1) (2021) (emphasis added); ORS 305.620(6) (2021) (conferring jurisdiction on Tax Court to hear appeals in cases involving certain local taxes administered by a state agency).

Plaintiff does not dispute that, for tax year 2019, the CES was reported on the same return as the "Business License Tax," nor does Plaintiff dispute that the Business License Tax is a net income tax imposed by Plaintiff.[5] (*See* Ptf's Response at 1; 4.) Rather, Plaintiff contends that appeals involving the CES are not subject to ORS 305.410(3), but only to ORS 305.410(4), added in the same 2024 amendment, which refers specifically to *this* division as the starting point for local, non-income tax cases that are filed in this court or transferred to this court from a circuit court:

> "(4)(a)(A) The *regular division* of the tax court and the circuit courts shall have concurrent jurisdiction for the hearing and determination of all questions of law and fact arising under any tax law of a local government *not described in subsection (3) of this section*.
>
> "(B) *For purposes of this subsection, tax laws of a local government not described in subsection (3) of this section include, but are not limited to, taxes authorized by ORS chapter 221 and laws of a local government imposing a tax on wages or net earnings from self-employment, on the sale or use of goods or services or on the transfer of real property.*
>
> "(b) Notwithstanding paragraph (a) of this subsection, the tax court shall not have jurisdiction to review determinations of a local government relating to the collection, enforcement, administration or distribution of a tax described in this subsection.
>
> "(c)(A) The presiding judge of a circuit court may order a case described in paragraph (a) of this subsection to be transferred to the judge of the tax court upon motion of any party or on the court's own motion and the judge of the tax court may order such a case to be transferred to a circuit court upon motion of any party or on the court's own motion.
>
> "(B) Lack of subject matter jurisdiction in the court transferring the case shall not be grounds for dismissal in the other court.
>
> "(d) For purposes of this subsection, the commencement of an action in the magistrate division of the tax court, or the transfer of a case to the magistrate division, is not grounds for dismissal and the judge of the tax court shall specially designate any such case for hearing in the regular division as provided in ORS 305.501 (1).

---

[5] According to Plaintiff, the CES ceased to be required to be reported on the Business License Tax return for certain tax years after 2019. (*See* Ptf's Response at 2: 20-24.)

"(e) For purposes of any limitation on the time for commencement of an action described in this subsection, the date of filing shall be the first date on which the action is filed in a circuit court or in either division of the tax court.

"(f) Notwithstanding ORS 305.425 or other law, for actions described in this subsection, only those remedies available in a circuit court shall be available in the tax court, including but not limited to, writ of review or mandamus under ORS chapter 34 and declaratory judgment under ORS chapter 28.

"(g) Proceedings in the tax court under this subsection shall be without a jury and appeal from the tax court shall be to the Supreme Court under ORS 305.445."

ORS 305.410(4) (emphases added).[6]

To resolve the parties' differing interpretations of subsections (3) and (4) of ORS 305.410, the court applies the framework in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), which requires consideration of the statutory text and context, along with any proffered legislative history the court finds helpful, and any pertinent maxims if the meaning remains ambiguous.

1.      *Text Analysis Under* Gaines

Based on the text, the court readily concludes that subsections (3) and (4) operate together and without ambiguity:

- A complaint may be filed in the Regular Division, as provided in subsection (4), only if the question of law or fact arises under a "tax law of a local government *not described in subsection (3)."*

- Under subsection (3) and ORS 305.501(1), a complaint in a case arising under a tax law imposed by a local government must be filed in the Magistrate Division, if the case involves either:
  - A tax imposed on or measured by net income, or
  - A tax or fee reported on the same return as a tax imposed on or measured by net income.

---

[6] The 2024 act added subsection (4) in its entirety to ORS 314.410. *See* Or Laws 2024, ch 52, § 36. As noted, the 2024 act also amended the 2023 language in subsection (3) by adding the phrase "or taxes or fees that are reported on the same return as a tax imposed on or measured by net income." *Id.*

Plaintiff correctly argues that the legislature has *generally* created two separate appeal paths, one for net income tax cases (commencing in the Magistrate Division pursuant to subsection (3)) and another for non-income tax cases (commencing in the Regular Division pursuant to subsection (4)). (Ptf's Response at 4-6.) However, Plaintiff incorrectly ignores the express provision in subsection (3) that includes non-income tax cases (and cases involving fees) within the category of appeals required to be commenced in the Magistrate Division if the non-income tax or the fee is reported on the same return as a net income tax. Plaintiff also ignores the express cross-reference to subsection (3) found in subsection (4)(a)(A). Based on the plain text, the court agrees with Defendants' position and disagrees with Plaintiff's position.[7]

2.      *Context*

As a matter of context, Plaintiff argues that this case should be allowed to commence in the Regular Division, because by the time the legislature enacted subsection (3), the CES was no longer reported on the Business License Tax return but was required to be reported separately on a freestanding return. (*See* Ptf's Response at 4.) The court rejects this argument because the legislature is deemed to have been aware that virtually all taxes are imposed and assessed as of a particular moment or period of time, and that the laws governing the reporting of taxes can change over time. *See, e.g., State v. Waterhouse,* 209 Or 424, 436, 307 P2d 327 (1957) (legislature presumed aware of earlier enactments), *declared superseded by statute on other grounds, State v. Blacker,* 234 Or 131, 135-36, 380 P2d 789 (1963); *see generally* ORS 316.037 (imposing personal income tax "for each taxable year"); ORS 308.210(1) (county assessor "shall proceed each year to assess the value of all taxable property within the county * * * as of January

---

[7] This textual conclusion is consistent with the court's own rule providing guidance to litigants. *See* Tax Court Rule (TCR) 1 C(1)(e) ("Appeals involving local income taxes, *or taxes or fees reported on a local income tax return*, must be filed in the Magistrate Division.") (emphasis added).

1, at 1:00 a.m. of the assessment year * * *.").  Tax years after 2019 are not before the court, and Plaintiff offers no contextual evidence indicating that the legislature intended to ignore local laws governing reporting of the CES for tax year 2019.  The court concludes that Plaintiff's argument based on context does not overcome the plain text, which favors Defendants.

3.    *Legislative History and Maxims*

Neither party points to legislative history that the court finds useful to the analysis. Plaintiff, however, invokes a maxim of statutory construction, arguing that Defendants' interpretation leads to "absurd results" that the court must avoid.  (Ptf's Response at 5.) Fundamentally, this argument fails because the statutory text clearly supports Defendants' interpretation.  *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996) ("When the legislative intent is clear from an inquiry into text and context, * * * it would be inappropriate to apply the absurd-result maxim. If we were to do so, we would be rewriting a clear statute based solely on our conjecture that the legislature could not have intended a particular result."). Nonetheless, the court briefly addresses Plaintiff's two specific points.  First, Plaintiff posits that the CES as of 2019 fits, confusingly, into both subsection (3) and subsection (4) of ORS 305.419.  However, this proposition is clearly incorrect, as the express exclusion in subsection (4) of cases involving local tax laws "described in subsection (3)" prevents any overlap between the two subsections.  A second supposed absurdity is that an appeal could involve more than one tax year, requiring a complaint in each division of the court, which "would likely lead to inconsistent results and would be wasteful of the Court's resources."  (Ptf's Response at 5.)  This argument ignores the inherent power of the court to manage its docket, including for the efficiency of all concerned.  *See Seneca Sustainable Energy, LLC v. Dept. of Rev.*, 23 OTR 1, 2 (2018).  The court's tools include the power to hold cases in abeyance pending the outcome of other proceedings.  *See id.*  Alternatively, the "special designation" procedures

laid out in Tax Court Rule (TCR) 1 C(2) allow the judge to move a Magistrate Division case to the Regular Division, potentially for later consolidation under TCR 53.  The court finds Plaintiff's "absurd result" argument baseless.

4.      *Conclusion*

Based on the foregoing analysis, the court concludes that this division may not hear the complaint.

B.      *Whether the Regular Division May Transfer the Case to the Magistrate Division in Lieu of Dismissal*

The court turns to Plaintiff's first alternative request, that this case be "transferred" to the Magistrate Division.  The court concludes that it lacks authority to do so.  Plaintiff argues that ORS 305.410(4)(d) authorizes such a transfer.  (*See* Ptf's Response at 6.)  However, that provision applies only "[f]or purposes of this subsection." The court already has concluded that this case is described in subsection (3), not subsection (4).  To the court's knowledge, no other transfer statute allows either division of this court to transfer a case *to* the other division or to another court.  *Cf.* ORS 14.165(1), (3) (allowing transfer of cases *to* this court *from* circuit court or *from* Court of Appeals, respectively).  A case erroneously filed in this division must be dismissed.  *See Wynne v. Dept. of Rev.*, 342 Or 515, 520, 156 P3d 64 (2007) (upholding dismissal of complaint incorrectly filed in Regular Division without prior appeal in Magistrate Division).

C.      *Whether the Regular Division Should Dismiss Without or With Prejudice*

1.      *Dismissal Without Prejudice is the Default*

Plaintiff's second alternative request, that dismissal be without prejudice, is well taken. Dismissal *without* prejudice is the default result of an involuntary dismissal under this court's

rules, as well as the Oregon Rules of Civil Procedure (ORCP) on which they are based. *See* TCR 54 B(4) ("Unless the court in its judgment of dismissal otherwise specifies, a dismissal under this section operates as an adjudication without prejudice."); ORCP 54 B(4) (same); *cf.* ORS 18.082(5) ("Except as otherwise provided by law, by the Oregon Rules of Civil Procedure or by the terms of the judgment, a general judgment of dismissal is without prejudice as to any request for relief in the action."). Dismissal with prejudice has a serious consequence: the Oregon Court of Appeals has held that, "[i]n Oregon, a dismissal 'with prejudice' creates a claim-preclusive bar, even if the dismissal was due to a procedural fault and not a decision on the substantive validity of the action." *Wallace v. Holden*, 297 Or App 824, 839, 445 P3d 914 (2019) (internal quotation marks omitted) (in vehicle negligence matter, reversing judgment of dismissal with prejudice for lack of personal jurisdiction; remanding for entry of judgment of dismissal without prejudice). For that reason, dismissal generally should be without prejudice, so as to "not preclude a subsequent action based on the same claim in the proper forum." *Id.* at 840.

2.   *Applicability of ORS 12.220 in the Tax Court*

Here, Defendant essentially argues that dismissal with prejudice is required because Plaintiff's stated plan to replead in the Magistrate Division under ORS 12.220 is futile. (*See* Defs' Reply at 6 ("ORS 12.220 does not apply in the Oregon Tax Court.").) ORS 12.220 provides:

> "(1) Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.

"(2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute.

"(3) A new action may be commenced only once under this section for the same claim or claims.

"(4) All defenses that would have been available if the original action had been commenced within the time otherwise allowed by statute shall be available in a new action commenced under this section."

ORS 12.220.  The court is aware of no prior cases deciding whether ORS 12.220 applies to this court.  *But see Sanok v. Grimes*, 306 Or 259, 760 P2d 228 (1988) (*Sanok II*) (declining to decide whether ORS 12.220 (1987) applied to tort claims incorrectly filed in Tax Court) (discussed below); *Dept. of Rev. v. American Honda Motor Co., Inc.*, 20 OTR 404, 407 (2011) (mentioning ORS 12.220 in *dicta*).[8]  Therefore, the court again applies the statutory interpretation framework in *State v. Gaines*, 346 Or at 171-72.

    a.  Text analysis under *Gaines*

Neither ORS 12.220 nor any other statute expressly addresses whether ORS 12.220 applies in this court.  By its terms, however, ORS 12.220 applies to "a court," which clearly includes this court.  ORS 12.220(1); *see* ORS 305.405(2) (describing this court as "a court of justice" that, within its subject matter jurisdiction and as applied to this division, "[h]as the same powers as a circuit court.").  Accordingly, the question is whether an exception causes ORS 12.220 to not apply.

---

[8] In *American Honda*, the Department of Revenue's complaint was not timely "filed with [the] court"; for that reason, the court had no occasion to consider whether ORS 12.220 (2011) applied.

Defendants argue that two statutes governing appeals in this court, ORS 305.280(1) and ORS 305.501(1), contain exceptions that are exclusive and that therefore preclude the exception contained in ORS 12.220.  The court disagrees.  The first statute provides:

> "*Except as otherwise provided in this section*, an appeal under ORS 305.275(1) or (2) shall be filed within 90 days after the act, omission, order or determination becomes actually known to the person, but in no event later than one year after the act or omission has occurred, or the order or determination has been made.[9]  An appeal under ORS 308.505 to 308.674 shall be filed within 90 days after the date the order is issued under ORS 308.584(3). An appeal from a supervisory order or other order or determination of the Department of Revenue shall be filed within 90 days after the date a copy of the order or determination or notice of the order or determination has been served upon the appealing party by mail as provided in ORS 306.805."

ORS 305.280(1) (emphasis added).  The second statute provides:

> "*Except as provided in subsection (2) of this section*, an appeal to the tax court shall be heard by a tax court magistrate unless specially designated by the tax court judge for hearing in the regular division.  In any matter arising under the property tax laws and involving a county or county assessor that is designated for hearing in the regular division, the Department of Revenue shall be substituted for the county as a party. The plaintiff or petitioner in the appeal is not required to pay any additional filing fee if the proceeding is specially designated by the tax court judge for hearing in the regular division."

ORS 305.501(1) (emphasis added).[10]  Defendants argue that the italicized "except" clauses "limit any exceptions to each statute to those found within ORS 305.280 and ORS 305.501(2), as applicable, and not to provisions located elsewhere in Chapter 305 or an entirely different chapter of the Oregon Revised Statutes."  (Defs' Reply at 7.)

---

[9] ORS 305.275(1) describes acts, omissions, orders, and determinations of various taxing authorities that may be appealed to the Magistrate Division; however, subsection (1) does not apply to appeals from a county property value appeals board.  *See* ORS 305.275(3).  ORS 305.275(2) provides:

> "Except as otherwise provided by law, any person having a statutory right of appeal under the revenue and tax laws of the state may appeal to the tax court as provided in ORS 305.404 to 305.560."

[10] Subsection (2) of ORS 305.501 provides for mediation in lieu of a "hear[ing] by a tax court magistrate":

> "A party to the appeal may request mediation, or the tax court on its own motion may assign the matter to mediation.  If the mediation does not result in an agreed settlement within 60 days after the end of the mediation session, the appeal shall, absent a showing of good cause for a continuance, be assigned to a magistrate for hearing."

The court finds that Defendants' proffered interpretation is not the only reasonable one. An alternative interpretation is that the "except" clause at the beginning of each of the two statutes serves as a signal that the general rule that follows is subject to conditions, including conditions that may be placed elsewhere in the same statutory section. Thus read, the "except" clause at the start of the sentence reflects a drafting technique that "state[s] the circumstances in which the rule is to apply before stating the rule itself." Legislative Counsel Committee, *Bill Drafting Manual*, 3.7 (19th ed 2024). Under this latter interpretation, the "except" clause is not necessarily exclusive; other statutory exceptions may apply as well.

Defendants also argue that ORS 12.220 cannot apply because the legislature did not include a clause that subordinates ORS 305.280(1) or ORS 305.501(1) to ORS 12.220.[11] (*See* Def's Reply at 8.) The court agrees that a specific subordinating clause could, in theory, clarify whether ORS 12.220 applies. However, the *absence* of such a clause does not allow the court, under the first step of the *Gaines* analysis, to conclude that ORS 12.220 does *not* apply. Instead, as in many cases that require the court to "reconcile" or "harmonize" statutes, the absence of such a clause simply means that the text alone does not resolve the issue. *See generally* Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 668, 691 (2019) (discussing "assumption of consistency"). The court concludes that the text of ORS 305.280(1) and ORS 305.501(1) does not preclude application of the saving statute in ORS 12.220. The court proceeds to an examination of context under *Gaines.*

### b. Context

The context of a statute generally includes materials existing at the time the statute was enacted. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 308-13 (2014) (considering "FCC

---

[11] For example: "Except as provided in ORS 12.220," or "Except as otherwise provided by law."

decisions, cases, law review articles, and textbooks" published in or before year statute enacted). As recounted above, Defendants identify three statutes, arguing that two statutes involving tax appeals (ORS 305.280(1) and ORS 305.501(1)) render the saving statute (ORS 12.220) inapplicable. The court starts by determining the enactment dates of the relevant statutory language, finding that the saving statute language long antedates the language of the two tax appeal statutes, which was adopted in 1995. Using 1995 as the measuring date, the court finds instructive an existing tax administration statute describing the statutory deadlines for appeals to this court as "period[s] of limitations." ORS 305.425(2) (1993). Reading this statute together with case law that applies the saving statute to limitations periods contained outside ORS chapter 12, the court is persuaded that the 1995 legislature intended ORS 12.220 (1995) to apply to the times provided for appeals to this court.

(1) 1995 is the relevant date as of which to examine context

The text of ORS 12.220 is by far the oldest of the three provisions at issue, dating in relevant part to 1921, when the legislature extended the original 1862 saving law (applicable only after reversal on appeal) to apply after dismissal by the trial court:[12]

> "If an action shall be commenced within the time prescribed therefor and such action be dismissed upon the trial thereof, or upon appeal, after the time limited for bringing a new action, the plaintiff, or if he die and any cause of action in his favor survives, his heirs or personal representatives, may commence a new action upon such cause of action within one year after such dismissal or reversal on appeal; provided, however, that all defenses that would have been available against such action, if brought within the time limited for the bringing of such action, shall be available against said new action when brought under this provision."

_____

[12] The 1921 text remained the same well through 1995, until the 2003 amendments discussed below, except that the 1961 legislature added as a preface the phrase "Except as otherwise provided in section 72.7250 of this 1961 Act," which subordinated ORS 12.220 to the Uniform Commercial Code, enacted as part of the same 1961 law. Or Laws 1961, ch 726, § 397. The 2003 amendments eliminated that subordinating clause. _See_ Or Laws 2003, ch 296, § 1 (HB 2284); Exhibit 1, House Judiciary Committee, HB 2284, Feb 11, 2003, 2 (Summary of Testimony of Professor Maury Holland) ("Oregon has had a saving statute since statehood in the form of the present ORS 12.220 apart from one amendment incorporating the reference to ORS 72.7250, which has been deleted as no longer needed.")

Or Laws 1921, ch 6 (SB 26) (amending *General Laws of Oregon*, Civ Code, ch I, title II, § 21 p 109 (Deady 1845-1864)).[13]

As to the language of the other two statutes at issue, the court concludes that 1995 is the relevant enactment date. The tax appeal limitations statute, ORS 305.280(1), was enacted in 1977, but at that time the statute prescribed only the deadlines for the administrative appeal process that predated the Magistrate Division. *See* Or Laws 1977, ch 870, §§ 5-6 (SB 833); ORS 305.280(1) (referring to an "appeal under subsection (1) of ORS 305.275"); ORS 305.275(1) (1977) (prescribing right of "appeal to the Director of the Department of Revenue"). Administrative appeals apparently were outside the scope of the saving statute. ORS 12.220 (1977) (applicable to "an action commenced" timely but dismissed); ORS 12.020 (1977) ("an action shall be deemed commenced * * * when the *complaint* is filed, and the *summons served*") (emphasis added). In 1995, as part of the bill creating the Magistrate Division, the legislature amended ORS 305.275(1), and thus also ORS 305.280(1), to apply to an "appeal to the tax court." Or Laws 1995, ch 650, § 7; ORS 305.275(1) (1995); *see* ORS 305.280(1) (1995) ("Except as otherwise provided in this section, an appeal under ORS 305.275 (1) or (2) shall be filed within 90 days after the act or omission becomes actually known to the person, but in no event later than one year after the act or omission has occurred. * * *."). The same 1995 law included ORS 305.501(1) as a new provision. *See* Or Laws 1995, ch 650, § 11 ("Except as provided in subsection (2) of this section, an appeal to the tax court shall be heard by a tax court

---

[13] The Oregon Supreme Court has held that the phrase "dismissed upon the trial thereof" did *not* mean that a trial upon the merits must have occurred, but rather that the case must have been "dismissed without a trial upon the merits, such as in a case when judgment of nonsuit is given, or when an action is dismissed for want of prosecution or for want of jurisdiction, and the like * * *." *White v. Pacific Tel. & Tel. Co.,* 168 Or 371, 375, 123 P2d 193 (1942). The legislature substantially rewrote the saving statute to its current form in 2003, but the as-amended reference to an action "dismissed * * * on any ground not adjudicating the merits" has been held to retain the same meaning: ORS 12.220 applies to "dismissals that do not result in claim preclusion." *Ram Technical Services, Inc. v. Koresko*, 346 Or 215, 234, 208 P3d 950 (2009).

magistrate unless specially designated by the tax court judge for hearing in the regular division."). The court thus reviews, as context for the understanding of ORS 305.280(1) and ORS 305.501(1), materials such as statutes and caselaw available to the legislature as of 1995.

> (2) ORS 305.425(2) (1993) treats Tax Court appeal deadlines as "period[s] of limitations"

One such statute in place in 1995 is ORS 305.425(2) (1993) (emphasis added), which expressly characterized statutory deadlines for appeals to this court, including the times listed in ORS 305.280(1), as "period[s] of limitations":

> "If a statute provides for an appeal to or a review by the court of an order, act, omission or determination of the Department of Revenue, a board of equalization or board of ratio review or of any other administrative agency, the proceeding shall be an original proceeding in the nature of a suit in equity to set aside such order or determination or correct the act or omission. *The time within which the statute provides that the proceeding shall be brought is a period of limitations and is not jurisdictional*."

As of 1995, the legislature used the phrases "period of limitations," "statute of limitations," and other constructions of the word "limitation" in numerous statutes in ORS chapter 12, to which the saving statute unquestionably applied. *See, e.g., Moore v. Ball, Janik & Novack*, 120 Or App 466, 852 P2d 937 (1993) (applying ORS 12.220 (1991) to 2-year tort limitations statute in ORS 12.110 (1991), *review denied* 317 Or 485 (1993)); *see also Communications Management Services, LLC v. Qwest Corp.*, 726 F Appx 538, 542 n 7 (9th Cir 2018) (applying ORS 12.220 to the 6-year statute of limitations in ORS 12.080). The court concludes that the legislature's express characterization of ORS 305.280(1) as a "limitations" statute makes it more likely that the legislature viewed that statute as one to which the saving statute applied.[14]

---

[14] The 1965 legislature, as part of a bill amending this court's 1961 organic law in various respects, apparently enacted the phrase "period of limitations and not jurisdictional" to override the result in *McCain v. State Tax Commission*, 227 Or 486, 360 P2d 778 (1961), *overruled by Stroh v. SAIF*, 261 Or 117, 492 P2d 472 (1972). *See* Or Laws 1965, ch 6, § 3 (amending ORS 305.425); *Loveness v. State Tax Commission*, 3 OTR 25, 26-27 (1967) (describing 1965 amendment). *McCain* involved ORS 314.455 (1959), which allowed appeal of an income tax determination of the State Tax Commission to be made by filing a complaint in circuit court within 60 days after notice and by "'serving a true copy thereof upon the commission by registered mail * * * .'" *Id.* at 488 (quoting

(3)     Two lines of cases applying ORS 12.220 as of 1995

Turning to case law, two lines of cases firmly support the view that ORS 12.220 applies broadly to any statute of limitations, whether codified within or without ORS chapter 12, unless an exception applies.   The first line, most closely on point, illustrates that ORS 12.220 applies to a statutory deadline for appeal to a circuit court from the decision of an administrative agency, as long as the scope and proceedings of the circuit court appeal more closely resemble an "action" within the meaning of ORS 12.220, as opposed to a judicial "appeal" of the decision of a lower court or tribunal.[15]  *Burkholder v. S.I.A.C.*, 242 Or 276, 409 P2d 342 (1965).  In the second line of cases, the Oregon Supreme Court held that ORS 12.220 applied even to limitations that were stated in certain property insurance policies, because the policy language was precisely prescribed by an insurance statute, creating, "in effect, a statutory limitation period."  *Hatley v. Truck Insurance Exchange*, 261 Or 606, 611, 494 P2d 426 (1972), *adh'd to on denial of reh'g*, 261 Or 622, 495 P2d 1196 (1972).

D.     Burkholder *Test Determines Whether ORS 12.220 Applies to Trial Court Review of Agency Orders*

1.     *Applying* Burkholder *as Supreme Court Precedent*

---

ORS 314.455 (1959)).  The taxpayer effected personal service on the secretary of the commission rather than serving the commission by registered mail, and the circuit court dismissed the complaint.  The Oregon Supreme Court upheld the dismissal because it concluded that the statute was "jurisdictional" and thus required strict compliance.  *Id.* at 491.  In *Loveness*, this court cited the phrase "not jurisdictional" in concluding that the then-existing requirement in ORS 314.460(1) (1965) that a plaintiff taxpayer serve the defendant Department of Revenue required only that the taxpayer *attempt* service, by depositing the summons and complaint in the mail, which the court found consistent with ORS 12.030 (1965).  *See* 3 OTR at 26-27.  The 1977 legislature largely eliminated the requirement for a taxpayer to serve a summons and complaint on a government defendant by directing the court to do so.  *See* ORS 305.560(1)(b); Or Laws 1977, ch 870, § 10.

[15] All versions of ORS 12.220, past and present, apply to an "action."  *See, e.g.*, ORS 12.220 (1963) ("Except as otherwise provided in ORS 72.7250, if an action is commenced within the time prescribed therefor * * *."); ORS 12.220(1) (2025) ("Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute * * *.").

*Burkholder* remains good law and is binding on this court. *See Boquist v. Dept. of Rev.*, 23 OTR 263, 272 (2019) ("As a lower court, the Tax Court is required to apply the framework set out in [applicable Supreme Court decisions]"). Therefore, although Defendants do not cite it, this court first analyzes it on the merits, *sua sponte,* applying current law, to resolve whether appeals to the divisions of this court are "actions" eligible for relief under ORS 12.220. The court takes this initial step because an answer in the negative would at least arguably resolve the issue of the futility of repleading in favor of Defendants and make further *Gaines* analysis unnecessary. However, because the court concludes that appeals to either division of this court are "actions" to which ORS 12.220 may apply, the court takes the additional step of briefly applying *Burkholder* to the law as it stood in 1995 to test how it informs the legislature's intent as to the two tax appeal statutes Defendant cites.

In *Burkholder*, the commission appealed from a circuit court judgment that applied ORS 12.220 in a workers' compensation case. The worker had received an adverse determination from the commission, filed an initial complaint in circuit court that was involuntarily dismissed, and filed a second complaint in circuit court outside the time prescribed by the workers' compensation statutes but within the time allowed under ORS 12.220. *Burkholder*, 242 Or at 279-80. The commission defended on the ground of untimeliness, but the circuit court allowed the case to proceed to trial, where the worker prevailed. On appeal, the Supreme Court summarized the commission's argument:

> "[The commission] contends that [ORS 12.220 has] no application because ORS 656.286, in requiring that a workman file an action against the commission in the circuit court within 30 days after the final rejection of his claim by the commission, reads, 'the claimant may *appeal* to the circuit court.' (Emphasis supplied). The defendant commission argues that the word 'appeal' has a single fixed legal meaning--an appeal from an inferior court to a superior court; and that, the circuit court's jurisdiction under ORS 656.286(1) being 'appellate,' * * * ORS 12.220 [has] no application."

*Id.* at 281.[16]  The court rejected the commission's premise, concluding that "appeal" can refer to

"'calling upon a competent court for the determination of the claim.'"  *Id.* (quoting *Roles Shingle*

*Co. v. Bergerson*, 142 Or 131, 135, 19 P2d 94 (1933)).

The court then undertook a factor analysis, analyzing whether the circuit court

proceedings prescribed by the workers' compensation statute had "more of the characteristics of

original actions at law than they do of appeals from one judicial tribunal to another."  *Id.* at 281-

82.  The following weighed in favor of treating the circuit court proceedings as an action:

- "Pleading is the same as in other actions of original jurisdiction."  The court referred to ORS 656.288(2), which provided for "'filing with the clerk of the court a complaint, as provided in civil actions at law * * *.'"  *Id.* (internal quotations omitted).[17]

- "The case is tried *de novo* and all matters of fact and law are decided anew, subject only to the limitation that all issues must have been raised in the application for rehearing." *Id.*

---

[16] The workers' compensation statute at the time provided, in relevant part:

"'(1) Within 30 days after a copy of the final order of the commission upon the application for rehearing has been mailed or within 30 days after rehearing is deemed denied under ORS 656.284, the claimant may appeal to the circuit court for the county in which the accident occurred or, if the accident occurred outside of this state, to the circuit court of the last county of this state through which the workman passed in leaving this state. If the only question of fact in such appeal is the amount of compensation payable to the plaintiff, the appeal may be filed in the county in which the plaintiff resides.'"

*Id.* at 278 n 1 (quoting ORS 656.286(1) (1963)).

[17]  ORS 656.288 (1963) provided in full:

"(1) Upon such appeal the plaintiff may raise only such issues of law or fact as were properly included in his application for rehearing.
"(2) The appeal shall be perfected by filing with the clerk of the court a complaint, as provided in civil actions at law, and by serving a copy thereof by registered mail on the commission.  The commission shall within 20 days after receipt of such copy, answer, demur or move against the complaint.
"(3) The case thereafter shall proceed as other civil cases in the court; provided, that either party thereto may demand a jury trial upon any question of fact.  Such appeals shall have precedence over all other civil cases.
"(4) The commission may, or within 10 days after demand by plaintiff shall, file with the court a certified copy of the application for compensation, any application for rearrangement of compensation, application for rehearing, findings, orders, awards or decisions of the commission, which, upon being so filed, shall become a part of the records in such case but shall not be received in evidence unless admissible in the absence of this subsection.
"(5) Before or during the trial the court may order the plaintiff to submit to a medical examination."

- "The rules covering the burden of proof and the introduction and admissibility of evidence are the same as in any other action." *Id.*

- "Findings of the jury or the court in the trial of the case are binding as in all other actions at law." *Id.* (citing ORS 656.288(3) (1963)).

Based on these factors, the court concluded that the circuit court proceedings authorized by the workers' compensation statute constituted an action rather than an appeal. *Id.* at 281. The court affirmed the trial court's judgment allowing the worker to replead under ORS 12.220.

The Oregon Court of Appeals applied *Burkholder* in *US West Communications, Inc. v. Eachus*, 124 Or App 325, 862 P2d 102 (1993). Although this court is not bound by the decision, the court finds it instructive. The Court of Appeals held that an appeal to the circuit court from an order of the Public Utility Commission (PUC) was not an "action" within the meaning of ORS 12.220 (1993), primarily because the following features of the appeal statutes showed that the circuit court proceedings were not *de novo*:[18]

- In circuit court, the "'evidence is limited, with few exceptions, to that developed in the administrative record.'"

---

[18] The court quoted the then-applicable statutes as follows:

"ORS 756.594 provides:

"'In any suit referred to in ORS 756.580, the burden of proof is upon the party seeking to modify, vacate or set aside findings of fact, conclusions of law or the order to show by clear and satisfactory evidence that the order is unreasonable or unlawful.'"

"ORS 756.598 provides:

"'(1) Court review of any findings of fact, conclusions of law or order referred to in ORS 756.580, shall be conducted by the court without a jury, but the court shall not substitute its judgment for that of the commission as to any finding of fact supported by substantial evidence. The review shall be confined to the record and no additional evidence shall be received except as provided in ORS 756.600 or except to show alleged irregularities in procedure before the commission not shown in the record. The court may affirm, modify, reverse or remand the order.

"'(2) Errors in procedure shall not be cause for reversal or remand unless the court finds that substantial rights of the plaintiff were prejudiced thereby. In the case of a modification or reversal the court shall make special findings of fact based upon evidence in the record and conclusions of law indicating clearly all respects in which the commission's order is erroneous.'"

*Id.* at 330 n 3.

- To overturn findings of fact made by the commission, a plaintiff in circuit court bore a "'heavy burden'":
  - "'[T]o show by clear and satisfactory evidence that the Commissioner's order is unreasonable or unlawful'"; and
  - To show "that any challenged findings contained therein are not supported by substantial evidence."

*Id.* at 329 (quoting *Market Transport v. Maudlin*, 301 Or 727, 733, 725 P2d 914 (1986)). The court in *US West* also noted at the outset that the Supreme Court had referred to circuit court proceedings under the PUC statute as "an appellate review procedure" and as a "judicial review." *Id.* (internal quotation marks and citations omitted).

This court first applies the reasoning of *Burkholder* to the court's present-day operations, having determined that *Burkholder* is precedential. Under current law, this court readily concludes that proceedings in both divisions of this court have more of the characteristics of an "action" than of an appeal from a trial court to an appellate court.[19] The court finds the following factors determinative.

- *Trial* de novo. In both divisions, proceedings are expressly *de novo*; neither division looks to a record made in any earlier proceeding. *See* ORS 305.425(1) ("All proceedings before the judge or a magistrate of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo."). Every case proceeds to a bench trial unless resolved by motion or dismissal (voluntarily or by the court *sua sponte*).

---

[19] As background, nearly all cases within the subject matter jurisdiction of the Tax Court are required to begin in the Magistrate Division, which the legislature created in 1995 to replace the former administrative hearing process within the Oregon Department of Revenue. *See* ORS 305.501(1); *see generally* Henry C. Breithaupt & Jill A. Tanner, *The Oregon Tax Court at Mid-Century*, 48 Willamette L. Rev. 147, 148-52 (2011). Magistrates are not bound by the rules of evidence, nor are they bound by "technical or formal rules of procedure," apart from the rules the court has established specifically for the Magistrate Division. ORS 305.501(4)(a).

As discussed below, however, the differences between proceedings in the Magistrate Division compared to proceedings in circuit courts in no way cause Magistrate Division proceedings to resemble appellate court review of a trial court's findings of fact and conclusions of law.

Cases decided by a magistrate may be appealed to the Regular Division, which also hears cases that the Regular Division judge transfers from the magistrate at an early stage by "special designation," as well as a few types of cases that must originate in the Regular Division as a court of record, such as petitions for writs of mandamus or review, and declaratory judgment actions. *See generally* TCR 1 (listing case types). In all cases, however, the Regular Division hears the matter *de novo*--generally by trial or on dispositive motion--and the court is not bound by prior proceedings. *See* ORS 305.425(1) ("All proceedings before the judge or a magistrate of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo."). Appeals from the Regular Division are heard by the Oregon Supreme Court on direct review. *See* ORS 305.445.

- *Pleading*. All cases in the Magistrate Division, and nearly all cases in the Regular Division, are commenced by the filing of a complaint. *See* ORS 305.560(1)(a) ("Except for an order, or portion thereof, denying the discretionary waiver of penalty or interest by the Department of Revenue, an appeal under ORS 305.275 may be taken by filing a complaint with the clerk of the Oregon Tax Court * * *."); *but see, e.g.,* ORS 305.583 to 305.589 (certain property tax matters initiated by "petition"); ORS 34.030 (writ of review initiated by petition); ORS 34.130 (writ of mandamus initiated by petition). Statute requires proceedings and hearings in the Regular Division to "be [held] in accordance with the rules of practice and procedure promulgated by the court, which shall conform, as far as practical to the rules of equity practice and procedure in this state." ORS 305.425(3). As a result, the court's procedural rules are comparable to those in the circuit courts as they provide for an answer, potentially a reply, and dispositive motions. *See e.g.,* TCR 13 (kinds of pleadings allowed); TCR 21 (motions to dismiss); TCR 47 (motions for summary judgment). The Magistrate Division rules also contain similar pleading requirements, and a magistrate may rely on the Regular Division rules to fill any gaps. *See, e.g.,* TCR-MD 1 A (complaint); TCR-MD 2 (answer or motion to dismiss); TCR-MD Preface ("If circumstances arise that are not covered by a Magistrate Division rule, the rules of the Regular Division may be used as a guide to the extent relevant.").

- *Burden of proof*. The burden is generally on the "party seeking affirmative relief," and "the burden of going forward with the evidence shall shift as in other civil litigation." ORS 305.427. This standard is neutral in the sense that either party may find itself in the position of seeking affirmative relief, such as in the form of an income tax assessment, or a property tax valuation, that is higher or lower than the amount in place at the commencement of the case. *See, e.g.,* ORS 305.575 (additional assessment); ORS 305.412 (jurisdiction to determine correct valuation on the basis of evidence, without regard to values pleaded by parties).

- *No "substantial evidence" standard.* A "preponderance of the evidence shall suffice to sustain the burden of proof." ORS 305.427. A "substantial evidence" standard applies only when the Supreme Court reviews a Regular Division decision on appeal. ORS 305.445.

- *Evidence*. In the Regular Division, the statutory rules of evidence apply. *See* ORS 40.015(1). The Magistrate Division is expressly not bound by the rules of evidence, but is required to do "substantial justice." ORS 305.501(4)(a); ORS 40.015(1)(a). However, this relaxed evidentiary standard does not *constrain* the introduction of evidence, as occurs under an appellate review standard.

- *Court's findings.* In both divisions, all evidence must be submitted anew to the applicable division of the court, and the findings of the judge or magistrate override any findings made in a prior administrative proceeding. ORS 305.425(1).

2.      *Applying* Burkholder *as Context as of 1995*

Next, the court considers *Burkholder* and *US West* for the contextual guidance that those decisions offer for this court's contextual analysis under *Gaines.* The relevant provisions applicable in 1995, on the eve of the creation of the Magistrate Division, were materially

identical. *See* ORS 305.425(1) (1993) (*de novo*); ORS 305.560(1) (1993) (appeal from Department of Revenue order is taken by filing a "complaint"); ORS 305.427 (1993) (burden of proof is "preponderance of evidence"); ORS 40.015(1)(a) (rules of evidence apply to "all courts in this state except for * * * [t]he small claims division of the Oregon Tax Court"); *compare* ORS 305.412 *with former* ORS 305.435 (1993) (authorizing court to determine value of property "without regard to the values pled"). The court concludes that the weight of the factors involving the Regular Division as of 1995 is substantially the same. The court has no doubt that the 1995 legislature would have viewed an appeal to the Regular Division as an "action" within the meaning of ORS 12.220.

    3.   Hatley*: ORS 12.220 generally applies to an action involving a "statutory limitation period."*

    The second relevant line of cases, involving property insurance law, adds further contextual support to the view that the 1995 legislature would have expected ORS 12.220 to apply to Tax Court cases. In *Hatley v. Truck Insurance Exchange*, 261 Or 606, 494 P2d 426 (1972), *adh'd to on denial of reh'g*, 261 Or 622, 495 P2d 1196 (1972), the court held that ORS 12.220 applied to an insurance statute that neither referred to, nor was codified within, ORS chapter 12. The insurance statute, ORS 743.660 (1969) provided:

> "A fire insurance policy shall contain a provision as follows: 'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.'"

The plaintiff, an insured business owner seeking to recover on his policy for damage to his property, had initially filed his complaint in federal district court, but that court dismissed the case for lack of diversity jurisdiction. After the 12-month period in ORS 743.660 (1969), but within the one-year period then allowed by ORS 12.220 (1969), the insured filed a complaint in

Multnomah County Circuit Court, where he prevailed. The insurer appealed, arguing that the circuit court action was untimely, and the insured "relie[d] entirely on our 'saving' statute, ORS 12.220." *Id.* at 610. The insurer argued that ORS 12.220 did not apply to contractually agreed limitation periods, an unresolved point of law. The court found it unnecessary to address that argument because the court concluded that the 12-month period mandated by ORS 743.660 (1969) was "in effect, a statutory limitation period" to which ORS 12.220 (1969) applied. *Id.* at 611.

*Hatley* relied on an earlier decision that likewise applied a provision of ORS chapter 12, the "attempted service" statute, ORS 12.030 (1957), to a different codification of the same mandatory insurance policy language. *See Bell et al. v. Quaker City F. & M. Ins. Co.*, 230 Or 615, 370 P2d 219 (1962). In *Bell*, the insurer argued that the insured's action was untimely, and the insured invoked ORS 12.030 (1957), which provided that "[a]n attempt to commence an action shall be deemed equivalent to the commencement thereof" in certain circumstances. *Bell*, 230 Or at 617. The court implied that ORS 744.100 (1957), containing text materially identical to ORS 743.660 (1969), was a "special statute of limitations" that was governed by the provisions in ORS 12.020 (1957) and ORS 12.030 (1957) regarding commencement of an action.[20] *Id.* at 619-20. The court stated: "In effect, the legislature has amended ORS 12.080 and the case is no different than if the limitation with respect to insurance contracts had been added to that section by way of exception or proviso." *Id.* at 620.

---

[20] The relevant text of ORS 744.100 (1957) provided:

"No fire insurer * * * shall use * * * or renew any fire policy on property in this state unless it contains the following provisions, which shall form a portion of the contract between the insurer and insured:

'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within 12 months next after inception of the loss.'"

A 1982 decision distinguished *Hatley* and *Bell* without disturbing their holdings.  In *Ben Rybke Co. v. Royal Globe Insurance Co.*, 293 Or 513, 651 P2d 138 (1982), the court declined to apply the "advance payment" statute, ORS 12.155 (1977), to a policy governed by the same 12-month period prescribed in ORS 743.660 (1977).  The court reasoned that "the wording of ORS 12.155 is specific," in contrast to "[t]he general wording of ORS 12.020, 12.030 and 12.220" that made the holdings in *Hatley* and *Bell* possible.  *Id.* at 517-18.

      a.     *Sanok II*

Ignoring *Burkholder* and *Hatley*, Defendants point to one case, *Sanok II*, 306 Or 259.  Defendants argue that, because the Supreme Court in *Sanok II* "expressly declined to hold that ORS 12.220 applies to this Court," the 1995 legislature would have been on notice of a need to expressly extend the saving statute to tax appeals, if the legislature wanted it to apply.  (*See* Defs' Reply at 8.)  This court disagrees.

The relevant procedural facts took place years before *Sanok II* was decided.  The *Sanok* plaintiffs originally brought both tort claims and tax claims against a county assessor and members of his staff, in an action filed in this court.  This court dismissed *all* claims, the plaintiffs appealed, and the Supreme Court, in *Sanok I,* held that this court had no subject matter jurisdiction over the *tort* claims, remanding the *tax* claims to this court for trial.  *Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983) (*Sanok I*).  After the Supreme Court's decision in *Sanok I*, the plaintiffs filed a new action in circuit court, but by that time the tort limitations period had expired.  The circuit court dismissed, and the plaintiffs appealed a second time.  *See Sanok II*, 306 Or at 263-64.  In *Sanok II*, the plaintiffs argued that "filing the [tort] claims in the Tax Court tolled the statute of limitations," apparently invoking ORS 12.220.  *Sanok II*, 306 Or at 264.  The Supreme Court first pointed out that the plain text of the saving statute required the

first action (the Tax Court case) to have been "dismissed * * * *after* the time limited for bringing a new action." ORS 12.220 (1987) (emphasis added). The court then stated:

> "Even assuming that ORS 12.220 would apply where a plaintiff filed a tort action in the Tax Court, which we do not here decide, plaintiffs here do not come within the terms or the intent of ORS 12.220. Plaintiffs' action in the Tax Court was dismissed *long before* the original period of limitations had run."

*Sanok II*, 306 Or at 264 (emphasis added). The Supreme Court in *Sanok II* thus made clear that its reason for not deciding whether to apply the saving statute to an appeal in this court was that the facts of the case made that analysis unnecessary. At most, therefore, *Sanok II* would have informed the 1995 legislature that no court had decided whether the saving statute applied in tax appeals. In particular, when weighed against the context supplied by the *Burkholder* and *Hatley* cases, which expressly addressed ORS 12.220, the court sees no basis for Defendants' assertion that the "legislature's silence" in response to *Sanok II* is "telling" of an intention that ORS 12.220 should not apply in tax cases. (Defs' Reply at 8.)[21]

### b. Legislative History

Neither party has referred to legislative history on point. The court has found nothing helpful in the minutes, exhibits, and proposed or enacted amendments comprising the written legislative history of the 1995 law creating the Magistrate Division. *See, e.g.,* House Bill File, HB 2325, (LC 69-5, HB 2325, HB 2325-3 (Mar 1, 1995), HB 2325 (Mar 6, 1995 house amendments), HB 2325A, HB 2325B); Minutes, House Judiciary Committee Subcommittee on Civil Law, and Judicial Administration, HB 2325, Feb 9, 1995; Exhibits, House Judiciary Committee Subcommittee on Civil Law, and Judicial Administration, HB 2325, Feb 9, 1995, Ex B (testimony of Milt Jones, Department of Revenue appeals manual), Ex C (testimony of

---

[21] Defendants similarly point out that nothing in this court's rules of procedure adopts a saving clause (or a reference to ORS 12.220). (*See* Defs' Reply at 8-9.) The court appreciates suggestions to improve its rules but sees no basis to draw an inference from the absence of a rule to date.

Elizabeth Bailey, Association of Oregon Industries), Ex CA (testimony of Scot Sideras, Department of Justice), Ex G (testimony of Harry Turpack), Ex L (Appeals Data by County), Ex Q (testimony of David L. Canary), Ex R (testimony of Richard Munn);  Minutes, House Judiciary Committee Subcommittee on Civil Law, and Judicial Administration, HB 2325, Feb 13, 1995;  Exhibits, House Judiciary Committee Subcommittee on Civil Law, and Judicial Administration, HB 2325, Feb 13, 1995, Ex A (Oregon State Association of County Assessors), Ex D (testimony of Gil Riddell, Association of Oregon Counties); Minutes, House Judiciary Committee Subcommittee on Civil Law, and Judicial Administration, HB 2325, Feb 17, 1995; Minutes, House Judiciary Committee Subcommittee on Civil Law, and Judicial Administration, HB 2325, Feb 27, 1995; Senate Bill File, HB 2325, (HB 2325-A18, HB 2325-A (May 17, 1995 senate amendments), HB 2325-B, HB 2325C); Minutes, Senate Judiciary Committee, April 24, 1995; Exhibits, Senate Judiciary Committee, April 24, 1995, Ex A (testimony of David Carmichael), Ex B (HB 2325A proposed amendments), Ex C (HB 2325 proposed amendments), Ex D (HB 2325 proposed amendments), Ex E (HB 2325 proposed amendments), Ex F (HB 2325 proposed amendments), Ex G (HB 2325 proposed amendments), Ex H (testimony of David Canary), Ex I (testimony of Betsy Bailey, Association of Oregon Industries), Ex M (testimony of Edward Miska);  Exhibits, Senate Judiciary Committee, May 3, 1995, Ex A (testimony of Jerry Fisher), Ex L (testimony of David Canary), Ex M (testimony of John Lobdell), Ex O (testimony of Scott Fisher, Ex P (testimony of Jerry Hanson), Ex Q (proposed amendments of HB 2325-A12), Ex R (testimony of Mike Kalberg); Ex S (testimony of Mike Kalberg), Ex U (DOR hearing transcripts);  Minutes, Senate Judiciary Committee, May 10, 1995;  Exhibits, Senate Judiciary Committee, May 10, 1995, Ex W (HB 2325-A15 proposed amendments), Ex W-1 (HB 2325-A16 proposed amendments);  Exhibits, Ways and Means Committee (labeled "full committee exhibits").

Nor has the court found any helpful materials in the legislative history of the 2003 amendment of ORS 12.220. *See, e.g.,* Minutes, House Judiciary Committee, HB 2284, Feb 11, 2003; Minutes, House Judiciary Committee, HB 2284, Apr 28, 2003; Minutes, House Judiciary Committee, HB 2284, May 15, 2003; Exhibits, House Judiciary Committee, HB 2284, Feb 11, 2003, Ex 1 at 2 (Summary of Testimony of Professor Maury Holland); Exhibits, House Judiciary Committee, HB 2284, May 15, 2003 Ex D (Oregon Law Commission Saving Statute Report).

      c.     Defendants' arguments based on legal maxims

Defendants argue that application of ORS 12.220 would render "meaningless" or "superfluous" portions of the legislature's 2024 act providing for transfer of local non-income tax cases from a circuit court to this court. (Def's Reply at 9.) The 2024 act declares that the Regular Division of this court has concurrent jurisdiction with the circuit courts in such cases, provides a means for transfer between courts, and provides for the possibility that a case may be mistakenly transferred to the Magistrate Division rather than to this division. *See* Or Laws 2024, ch 52, § 36 (codified at ORS 305.410 (4)(c)). In that circumstance, this division is required to specially designate the case for hearing in this division. *See id*. (codified at ORS 305.410(4)(d)). It is true that the end result of that process is the same as if the case had been mistakenly transferred by the circuit court to the Magistrate Division, followed by dismissal and refiling in this division under ORS 12.220. *Cf. also* ORS 14.165 (authorizing, among other things*,* transfers from circuit court to Tax Court). However, in contrast to ORS 12.220, the 2024 act offers a path that avoids the burden on the plaintiff of awaiting an involuntary dismissal, filing a second complaint, and paying a second filing fee. Despite some overlap, ORS 12.220 does not make the 2024 act superfluous or meaningless, as Defendants contend. (Defs' Reply at 9.)

Defendants also warn that "absurd" conflicts of law would arise if the court were to allow Plaintiff to replead under ORS 12.220 because ORS chapter 12 includes statutes of limitation

that prescribe dramatically different periods than those set forth in the revenue and taxation laws. (Defs' Reply at 9-10.) This argument makes an unwarranted leap of logic. The issue before the court is the application of ORS 12.220, not whether all of chapter 12 applies to tax cases. *Ben Rybke Co.* teaches that the applicability of a statute in chapter 12 is tested on a statute-by-statute basis and depends on particular statute's specific text. *See Ben Rybke Co.*, 293 Or 513 ("advance payment" provision in ORS 12.155 (1977) inapplicable to mandatory policy language under ORS 743.660 (1977) requiring suit or action to be "commenced within 24 months next after inception of the loss"). The statute in this case, ORS 12.220, is not a statute of limitations that conflicts with a provision in chapter 305, but rather a saving statute that applies generically to "an action [that] is filed with a court within the time allowed by statute."

d. Defendants' public policy argument

Finally, Defendants contend that, if "ORS 12.220 applied to this matter, it would effectively permit taxpayers to file complaints challenging a notice of assessment in any Oregon circuit court in complete disregard of ORS 305.501(1), the Tax Court Rules, and the clear guidance provided by the Department of Revenue in the issued notice of assessment." (Defs' Reply at 10.) Defendants' portrayal omits the fact that a taxpayer can use ORS 12.220 only after awaiting involuntary dismissal in the circuit court, paying an additional filing fee in this court, and filing a new complaint. This court does not believe that allowing repleading under ORS 12.220 invites chaos or imperils the integrity of the tax appeal statutes.

5. *Conclusion: ORS 12.220 Applies to Tax Appeals*

The court declines Defendants' invitation to infer from the "except" clauses in ORS 305.280(1) and ORS 305.501(1) that the 1995 legislature intended to preclude the application of ORS 12.220 to appeals to this court. Abundant context indicates that the

legislature intended ORS 12.220 to apply generally. As of 1995, *Burkholder* and *Hatley* established the default rule that ORS 12.220 applies to any "statutory limitation period" governing an "action." The descriptor "period of limitations" in ORS 305.425(2) (1993) is specific evidence that the legislature considered the tax appeal statutes to prescribe statutory limitation periods. And under *Burkholder*, appeals to either division of this court, now and in 1995, easily qualify as "actions" within the meaning of ORS 12.220. *Sanok II* adds nothing to this analysis. In light of this context, the court reads the "except" clauses as part of the legislature's formulation of the respective statutory rules themselves, not as a directive to ignore any other generally applicable statute that modifies their meaning.

## III.     ORDER

Now, therefore,

IT IS ORDERED that Defendants' motion is granted except to the extent that Defendants seek dismissal with prejudice. The complaint is dismissed without prejudice.

Dated this 3rd day of August, 2026.

8/3/2026 1:35:46 PM

Judge Robert T. Manicke